MOORE, Chief Justice
(dissenting).
I respectfully dissent from the denial of the petition for a writ of certiorari filed by S.C. (“the father”). I would grant the petition because, in my opinion, the father’s verified statement of facts does not support the finding that the father’s minor child,' a daughter, was dependent. Rather, the facts suggest that the DeKalb Juvenile Court (“the juvenile court”) found the child to be dependent because of the father’s living conditions, which are a result of his poverty. I would grant- the petition to examine the record for evidence of dependency and to ensure that the State is not separating this child from her natural parent because of conditions common among the poor and underprivileged.
Having received a report about the child’s living conditions, the DeKalb County Department of Human Resources (“DHR”) became involved with the family on January 9, 2013.[1] Beth McDaniel, a DHR caseworker, testified that, when she visited the residence in which the child was living with the father and the mother she found the mother, the father, and the child living in a 10' x 10' block, building with dirt floors, a poorly kept roof, and no electricity or running water.[2] She testified that, although the building had a wood heater, the wood stacked outside the building was wet. She stated that two mattresses were lying on the dirt floor and that clothes and other belongings were stacked throughout the residence, including on the. mattresses and on the wood heater.
The child was placed in foster care. DHR held an individualized-service-plan (“ISP”) meeting on January 21, 2013, which both the father and the mother attended. DHR also held several subsequent ISP meetings. These meetings established, among other things, that, as part of the ISP, the father and the mother should obtain safe and stable housing and employment, should undergo psychological evaluations and drug and alcohol monitoring, should maintain visitation with the child while she was in foster care, should submit -to a substance-abuse assessment, and should complete counseling and parenting classes; that the child should be examined for sexual abuse; and that the child should remain in a foster home. At some point during these proceedings, the mother and the father separated.
McDaniel testified that, after the father and the mother moved out of their residence and separated, the father began living in a house owned by his grandmother, who no longer- resided in the house. - The child would, visit the- father at this house. The father testified that he had been living *652 in this house for approximately one year. The house was safe and had three bedrooms, a new roof, electricity, running water, and multiple sources of heat, including a gas heater, a wood heater, and electric heat. McDaniel testified that the living conditions in the house were adequate.
DHR referred the father to counseling with Michael Smith, a licensed counselor who had contracted with DHR to provide counseling services for DHR. Smith testified that he met with the father for an initial session on November 5, 2013, and that, during the session, the father communicated with him but blamed others for his troubles rather than accepting personal responsibility. Smith testified that he scheduled a second session with the father for November 24, 2013, but that the father did not appear for the session. Smith testified that he was unable to reach the father by telephone and that he had no further contact with the father after the first session. Smith stated that the father did not contact him about rescheduling; that his clients have access to his cell-phone number and can call, text, or e-mail him; and that a client’s lack of a telephone would interfere with the client’s ability to communicate with him. The father lacked a telephone. Smith admitted that he did not send any letters to the father and that he informs clients during their initial session that it is their responsibility to contact him if they miss a session. Smith contacted the father’s caseworker at DHR to advise her that the father had missed a session.
The father testified that he was unemployed and that he had difficulty finding a job because he dropped out of school in the 11th grade and never earned a General Equivalency Diploma (GED). He testified that he had held several jobs since DHR became involved with his child. He claimed that he lost jobs because he missed work to attend hearings in this case. His latest job was, he says, at Bass Tree Service, but he said he lost that job after his employer died in a work-related accident. The father says he worked for two months at a heating, air, and tree-service business but was laid off with other workers. Before that job, he says, he worked for Trees Unlimited for approximately two months but lost that job because he missed work to attend hearings in this case. The father also testified that he worked odd jobs and sold scrap metal and had “walked all over” for two months trying to obtain employment.
• According to the father, there is no evidence indicating that the child was ever sexually abused. The father submitted to a psychological evaluation by Dr. David Wilson at Gadsden Psychological Services, LLC, on June 25, 2013. Dr. Wilson determined that the father had good verbal skills, that he communicated adequately, and that he possessed good nonverbal skills. Dr. Wilson’s only concern was with the father’s short-term or working memory. Wilson testified that the father “reads pretty well in the average range.” He also testified that the father was capable of raising the child. Dr. Wilson indicated, however, that the father needed to accept responsibility for his actions and undergo counseling.
While the child was in foster care, DHR allowed the father and the mother to have supervised visitation with the child for two hours each Friday. McDaniel testified that, although the mother was inconsistent with her visitation, the father consistently visited the child. The father recently visited the child on her birthday, hung balloons for her birthday party, and bought her a gift.
The father alleges that the child struggles in her foster homes and is now in her fifth foster home. McDaniel testified that the first foster home was not a good fit for *653 the child, that the child was removed from the second foster home because of allegations of sexual abuse by the foster parent, and that the third foster home was merely a temporary placement while the allegations of sexual abuse by the previous foster parent were investigated. After the investigation revealed no sexual abuse, the child was returned to the second foster home until those foster parents moved out of state and chose to no. longer be foster parents. The child was removed from her fourth foster home because the foster parents could not deal with her behavior. The child was in her fifth foster home at the time of the termination hearing.
The father testified that he had an operational vehicle during the pendency of this case. Although his truck allegedly was broken down on the date of one hearing, he stated that he.had walked approximately 30 miles to attend the hearing.
In August 2013 the father was arrested for criminal mischief in the third degree when he broke a window in his grandmother’s house. In 2014 he was arrested for unlawful possession of a controlled substance and' unlawful possession of drug paraphernalia. DHR asked him to undergo drug assessments at a substance-abuse center and to submit to random alcohol and drug screening. DHR had no evidence indicating that the father tested positive for drugs at the time of his arrests. The father denies the drug-related charges and claims he was merely riding in a vehicle with someone who was in possession of drugs. The father alleges that the drugs belonged to the owner of the vehicle and that the father did not know the drugs were in the vehicle. The father testified that he has not been arrested for drugs since 2014. McDaniel testified that, although the father did not fully comply with the order that he submit to alcohol and drug screening, he was in compliance with that order at the time of the termination hearing. .The father participates in a drug-rehabilitation organization called Addicts for Christ. McDaniel testified that the father never tested positive.on a DHR drug screen.
The father testified that he loves his daughter with all of his heart and wants to be a father to her again. He says the child was placed in foster care because of a housing issue, but he now has adequate housing. The father testified that he feels as if he has been jumping through hoops but getting nowhere.' I do not believe that Rule 39, Ala. R.App. P., should serve as another' hoop to nowhere. I would issue the writ to eváluate the facts and merits of the father’s case.

. The father's petition refers to testimony from different hearings. It is unclear from the petition how many hearings were held and at which hearings the testimony occurred.